IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | )<br>)<br>) Civil Action No. 1:11-cv-00189-RWR |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| PRIME FOREX, LLC a/k/a PRIME4X | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

[PROPOSED] DEFAULT JUDGMENT ORDERING A PERMANENT INJUNCTION, AND OTHER ANCILLARY RELIEF AGAINST DEFENDANT PRIME FOREX, LLC

I.   INTRODUCTION

On January 26, 2011, Plaintiff, U. S. Commodity Futures Trading Commission ("Commission" or "CFTC"), filed *Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief* ("Complaint") (Docket ("Dkt") #1) seeking injunctive relief, civil monetary penalties and other equitable relief against Defendant Prime Forex, LLC a/k/a Prime4x ("Prime Forex") for violations of certain registration provisions of the Commodity Exchange Act ("the Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651(enacted June 18, 2008), to be codified at 7 U.S.C. § 1 *et seq.*, and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. § 1.1 *et seq.* (2010).

Subsequently, on February 24, 2011, the Commission filed an Affidavit in support of an Entry of Default by the Clerk against Prime Forex pursuant to Federal Rule of Civil Procedure

("Fed. R. Civ. P.") 55(a) (Dkt #3), and the Clerk entered a Default against Prime Forex on February 25, 2011 (Dkt #4).

Pursuant to Fed. R. Civ. P. 55(b), this matter now comes before the Court on the Commission's *Motion for Default Judgment and for Permanent Injunction and Other Ancillary Relief and Memorandum in Support Thereof* ("Motion") against Prime Forex for its failure to plead an Answer or otherwise respond in the instant matter to the Commission's Complaint.

This Court has considered the entire record in this matter, including the Commission's Motion, Memorandum in Support of the Motion and the attachments to the Memorandum, and finds that good cause exists for entry of the relief requested.

Accordingly, the Commission's Motion is **GRANTED**, as detailed below.

**THE COURT HEREBY FINDS:**

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the Commission's action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2. The Court has jurisdiction over the conduct and transactions at issue in this case pursuant to Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1, and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2).

3. Venue properly lies with the Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(e) (2006), in that Prime Forex transacts business in this District and certain

transactions, acts, practices, and courses of business alleged in the Complaint occurred, are occurring, and/or are about to occur within this District.

### III.   PARTIES

4.   The Commission is a federal independent regulatory agency charged by Congress with the administration and enforcement of the Act, as amended, to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2010).

5.   Prime Forex is a Delaware limited liability company ("LLC") with its principal place of business located at 2711 Centerville Road, Suite 400, Wilmington, DE 19807. Prime Forex registered as an LLC on October 29, 2007. Prime Forex also operates the website *www.prime4x.com*, where it solicits potential customers to engage in, among other things, online forex trading. The website also refers to Prime Forex and Prime4x, interchangeably. According to its website, Prime Forex's Head Office is at Suite 501, St. James Court, St. Denis Street, Port-Louis, Mauritius and its North American Representative Office is at 2711 Centerville Road, Suite 400, Wilmington, DE 19807.

### IV.   PROCEDURAL HISTORY

6.   On January 26, 2011, the Commission filed its two-count Complaint against Prime Forex seeking injunctive and other equitable relief for violations of certain registration provisions of the Act, as amended by the CRA, and the Regulations.

7.   Thereafter, on January 28, 2011, the Commission properly served Prime Forex pursuant to Fed. R. Civ. P. 4(h)(1)(B), by delivering copies of the Summons and Complaint to Prime Forex's registered agent in Delaware, The Company Corporation. The Commission filed the executed proof of service with the Court on February 3, 2011, and, as such, the Clerk made

3

an entry into the Docket noting that Prime Forex's response to the Complaint was due on or before February 18, 2011 pursuant Fed. R. Civ. P. 12(a)(1) (Dkt #2).

8.  Prime Forex, however, failed to Answer or otherwise respond to the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1). Accordingly, on February 24, 2011, the Commission filed an Affidavit in support of an Entry of Default by the Clerk against Prime Forex pursuant to Fed. R. of Civ. P. 55(a) (Dkt #3), and the Clerk entered a Default against Prime Forex on February 25, 2011 (Dkt #4).

## V. FINDINGS OF FACT

9.  The allegations of the Complaint are well-pled and hereby taken as true. This Order is supported by the following facts.

**A.  Statutory and Regulatory Background**

10. On October 18, 2010, the Commission enacted new regulations implementing certain provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§701-774, 124 Stat. 1376 (enacted July 21, 2010), and the CRA, to be codified at 7 U.S.C. §§ 1 *et seq.*, with respect to off-exchange foreign currency ("forex") transactions.

11. Pursuant to Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), an entity must be registered if it wants to solicit or accept orders from a non-Eligible Contract Participant ("non-ECP") in connection with forex transactions at a retail foreign exchange dealer ("RFED") or futures commission merchant.

12. An Eligible Contract Participant ("ECP") is defined by the Act, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the

4

transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." *See* Section 1a(12)(A)(xi) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 1a(12)(A)(xi).

13. For the purposes of trading forex, a RFED is defined in Regulation 5.1(h)(1), to be codified at 17 C.F.R. § 5.1(h)(1), as any person that is, or offers to be, the counterparty to a retail forex transaction, except for a person described in sub-paragraph (aa), (bb), (cc)(AA), (dd), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(B)(i)(II). These exceptions pertain to certain United States financial institutions, brokers and dealers registered under the Securities Exchange Act and associated persons thereof, futures commission merchants and affiliated persons thereof, financial holding companies, and RFEDs registered with the Commission, and do not apply to Prime Forex.

14. Pursuant to Regulation 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i), in connection with forex transactions, all RFEDs must be registered with the Commission as of October 18, 2010.

**B.    Prime Forex**

15. Through its website, *www.prime4x.com.*, Prime Forex solicits United States customers who are non-ECPs to open leveraged forex trading accounts and trade forex at Prime Forex. The website also refers to Prime Forex and Prime4x, interchangeably.

16. As advertised on its website, Prime Forex offers three types of accounts, including "mini accounts" that require an initial deposit of $100, "standard accounts" that require an initial deposit of $2,000, and "institutional accounts" that require an initial deposit of $100,000.

17. The amounts required to fund these accounts are quoted in United States dollars. Further, Prime Forex utilizes the "MetaTrader 4" trading platform, which is commonly used by

5

companies that act as counterparties to customers' forex transactions. Customers can open trading accounts by submitting information online through Prime Forex's website.

18. Through representations made on the website, Prime Forex claims "to act as [the] principal for the customer for the execution and clearance of orders for transactions involving the purchase and sale of . . . foreign exchange transactions," which renders Prime Forex a counterparty to forex transactions.

19. Further, the forex transactions Prime Forex engages in neither result in delivery within two days nor create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts remain open from day to day and ultimately are offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

20. Moreover, Prime Forex does not ask about a person's total assets at any point during the account opening process, much less confirm that a person's assets equal or exceed $5 million.

21. In addition to offering forex transactions to non-ECPs, Prime Forex allows customers to invest on a margined basis. In other words, Prime Forex allows customers to invest with only a percentage of the value of the forex contracts that they purchase or intend to purchase. Customers are only required to keep sufficient funds in their accounts to meet Prime Forex's margin requirements.

22. Yet, at no time has Prime Forex been registered with the Commission in any capacity.

## VI. CONCLUSIONS OF LAW

### A. The CFTC Has Jurisdiction Over Prime Forex's Forex Transactions

23. The Commission has jurisdiction over Prime Forex's forex transactions because: (1) the transactions are offered or entered into (i) with a person that is a non-ECP and (ii) on a leveraged or margined basis or financed by the offeror, counterparty, or person acting in concert with either; (2) the transactions do not result in actual delivery within two days or otherwise create an enforceable obligation to make or take delivery in connection with the parties' line of business; and (3) Prime Forex, the counterparty to the transactions with the non-eligible contract participant is not one of certain enumerated persons. Section 2(c)(2)(C)(i) and (ii) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(i) and (ii).

### B. Prime Forex Violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, by Failing to Properly Register Before Soliciting and Taking Forex Orders for an RFED from Non-ECPs

24. Prime Forex violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, by soliciting and taking orders from non-ECPs in connection with forex transactions at an RFED without being properly registered.

25. Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, specifically states that:

> A person, unless registered in such capacity as the Commission by rule, regulation, or order shall determine…, shall not— (aa) solicit or accept orders from any person that is not an eligible contract participant in connection with agreements, contracts, or transactions described in clause (i) of this subparagraph entered into with or to be entered into with a person who is not described in item (aa), (bb), (dd), (ee), or (ff) of subparagraph (B)(i)(II).

26. The transactions referred to include leveraged or margined forex transactions conducted with non-ECPs at an RFED. These transactions do not result in actual delivery of the

7

traded foreign currency within two days or create an enforceable obligation to deliver the foreign currency.

27. Prime Forex solicits and enters into leveraged or margined forex transactions with non-ECPs that do not involve actual delivery of foreign currency or any obligation to do so. The transactions (*i.e.*, the buying and selling of foreign currency pairs) will occur between the non-ECPs and Prime Forex. In other words, Prime Forex is soliciting and entering into orders with non-ECPs on its own behalf. According to the information on its website and available from the applicable regulatory bodies, however, Prime Forex is not one of the persons exempt from registration under Section 2(c)(2)(C) (a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company).

28. Thus, because Prime Forex is not registered in any capacity with the Commission, it has violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA.

**C.   Prime Forex Violated Regulation 5.3(a)(6)(i) by Failing to Properly Register as a RFED**

29. Prime Forex also violated Regulation 5.3(a)(6)(i) by operating as an RFED without properly registering.

30. Regulation 5.3(a)(6)(i) provides that it is unlawful for any RFED to operate as such without registering. Regulation 5.1(h)(1), to be codified at 17 C.F.R. § 5.1(h)(1), defines an RFED as any person that is, or offers to be, the counterparty to a forex transaction, except for the following specifically enumerated entities: financial institutions, registered broker-dealers, certain futures commission merchants, insurance companies, financial holding companies or investment bank holding companies. Again, Prime Forex does not fall within any of these specifically enumerated categories. Nonetheless, it solicits and enters into forex transactions with customers.

8

31. Due to its failure to register with the Commission, Prime Forex has violated Regulation 5.3(a)(6)(i).

### VII. ORDER FOR PERMANENT INJUNCTION AND ANCILLARY RELIEF

32. The Commission has shown that Prime Forex has engaged, is engaging, and is about to engage in acts and practices which violate Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, and Regulation 5.3(a)(6)(i). Notwithstanding its default, the totality of the circumstances establish that, unless restrained and enjoined by this Court, there is a reasonable likelihood that Prime Forex will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act, as amended by the CRA, and the Regulations. In addition, the imposition of other ancillary equitable relief is required to comply with the basic objectives of the Act, as amended by the CRA, and the Regulations.. Furthermore, the nature of Prime Forex's violations and the need to deter others from committing similar violations of the Act and Regulations warrants the imposition of a civil monetary penalty.

**IT IS HEREBY ORDERED THAT:**

33. Prime Forex has violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, and Regulation 5.3(a)(6)(i). Therefore, judgment shall be and hereby is entered in favor of the Commission and against Prime Forex as follows:

**A.** **Prohibition on Violations of Section 2(c)(2)(C)(iii)(I)(aa) and Regulation 5.3(a)(6)(i)**

34. Prime Forex, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of Prime Forex, and all persons and entities insofar as they are acting in concert or participation with Prime Forex who receive actual notice of this order by personal service or otherwise, shall be permanently prohibited, enjoined and restrained from directly or indirectly:

      a.    engaging in any conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), including, but not limited to, soliciting or accepting orders from any person that is not an ECP in connection with forex transactions; and

      b.    engaging in any conduct in violation of Regulation 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i), including, but not limited to, offering to be the counterparty to its customers' forex transactions.

**B.  Removal of Website**

35. Prime Forex, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of Prime Forex, and all persons and entities insofar as they are acting in concert or participation with Prime Forex who receive actual notice of this order by personal service or otherwise, shall remove or cause to be removed from the Internet all webpages posted or authorized by them to be posted in which they solicit or accept orders or accounts from non-ECPs in connection with forex transactions or offer to be the counterparty to customers' forex transactions whether through www.prime4x.net, the Uniform Resource Locater ("URL") associated with such domain name, and/or any other domain name or URL created, operated, hosted and/or authorized by Prime Forex, in whole or in part. This includes, but is not limited to, submitting a removal request of the domain name(s) associated with the aforementioned conduct and corresponding URL(s) to the appropriate web-host provider and/or domain registration company.

36. Any person or entity providing web-hosting or domain name registration services in the United States for any website, domain name or affiliated URL under the ownership of Prime Forex, in whole or in part, which Prime Forex uses to solicit or accept orders or accounts from non-ECPs in connection with forex transactions at Prime Forex or to offer to be the counterparty to customers' forex transactions, including, but not limited to, www.prime4x.net, the URL associated with such domain name, and/or any other domain name or URL created,

operated, hosted and/or authorized by Prime Forex, in whole or in part, who receives actual notice of this Order by personal service or otherwise shall:

    a.    remove or cause to be removed from the Internet all webpages, within their control, which are posted or authorized or to be posted or authorized by Prime Forex or any persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of Prime Forex, in which Prime Forex: 1) solicits or accepts orders or accounts from non-ECPs in connection with forex transactions at Prime Forex; or 2) offers to be the counterparty to customers' forex transactions;

    b.    preserve all documents related to any website operated, in whole or in part, under the name prime4x.net, as well as any website that is substantially identical in appearance to that website; and

    c.    immediately notify counsel for the Commission of any other web page or website operated or controlled by or on behalf of Prime Forex.

**C.**    **Trading, Solicitation and Registration Prohibitions**

37.    Prime Forex, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of Prime Forex, and all persons and entities insofar as they are acting in concert or participation with Prime Forex who receive actual notice of this order by personal service or otherwise, shall be permanently prohibited, enjoined and restrained from directly or indirectly:

    a.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 1a);

    b.    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2010)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal account or for any account in which they have a direct or indirect interest;

    c.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account

        involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

d.     soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

e.     applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010); and

f.     acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010).

### D.   Equitable Relief Provisions

38.     The equitable relief provisions of this Order shall be binding upon Prime Forex and any person who is acting in the capacity of officer, agent, employee, servant, or attorney of Prime Forex, and any person acting in active concert or participation with Prime Forex who receives actual notice of this Order by personal service or otherwise.

### E.   Civil Monetary Penalty

39.     Prime Forex shall pay to the Commission a civil monetary penalty of $280,000, plus post-judgment interest.

40.     Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on that day, pursuant to 28 U.S.C. § 1961(a).

41.     Prime Forex shall pay the civil monetary penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. Unless the payment is made by electronic funds transfer, it shall be made payable to the Commodity Futures Trading Commission and sent to:

Commodity Futures Trading Commission
Division of Enforcement
Attn: Marie Bateman – AMZ-300
DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
(405) 954-6569

42. If Prime Forex chooses to make the payment by electronic funds transfer, it shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Prime Forex shall submit its payment with a cover letter that identifies it and the name and docket number of this proceeding. Copies of the cover letter and the form of payment shall be simultaneously transmitted to David Meister, Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581; and to Rosemary Hollinger, Regional Counsel, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 525 W. Monroe Street, Suite 1100, Chicago, IL 60661.

## VIII. MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED THAT:**

43. Copies of this Order may be served by any means, including facsimile transmission, e-mail, United Parcel Service and Federal Express, upon Prime Forex or any other entity or person that may be subject to any provision of this Order. James Deacon and Kathleen Banar, all employees of the commission, are hereby specially appointed to serve process, including this Order and all other papers in this cause.

44. All pleadings, correspondence, notices or other materials required by this Order shall be sent to James W. Deacon, Senior Trial Attorney, Division of Enforcement, Commodity

Futures Trading Commission, Three Lafayette Centre, 1155 21st Street N.W., Washington, D.C. 20581.

45.     This Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action.

46.     There being no just cause for delay, the Clerk of the Court shall enter final judgment against Prime Forex forthwith and without further delay.

**SO ORDERED**, at the District of Columbia on the 27th day of May 2011.

_____
**UNITED STATES DISTRICT JUDGE**